UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.: ____________________

INTERNATIONAL FIDELITY INSURANCE COMPANY, a foreign corporation, and ALLEGHENY CASUALTY COMPANY, a foreign corporation,

Plaintiffs,

v.

AMERICARIBE – MORIARITY JV, a joint venture,

Defendant.
___________________________________/

**COMPLAINT FOR DECLARATORY RELIEF**

Plaintiffs, INTERNATIONAL FIDELITY INSURANCE COMPANY and ALLEGHENY CASUALTY COMPANY, hereby sue Defendant, AMERICARIBE – MORIARITY JV, and allege as follows:

## I. JURISDICTION AND VENUE

1. This is an action for declaratory judgment and supplemental relief under 28 U.S.C. §§220l and 2202.

2. Subject matter jurisdiction is based upon 28 U.S.C. §1332(a)(1), diversity of citizenship. The parties are citizens of different states and the amount in controversy exceeds the jurisdictional limits of this Court.

3. Plaintiff, INTERNATIONAL FIDELITY INSURANCE COMPANY, is a corporation organized and existing under the laws of the State of New Jersey, whose principal

place of business is located in the City of Newark, New Jersey, and who is duly registered and authorized to do business in the State of Florida, and thus is a citizen of the State of New Jersey.

4. Plaintiff, ALLEGHENY CASUALTY COMPANY, is a corporation organized and existing under the laws of the State of New Jersey, whose principal place of business is located in the City of Newark, New Jersey, and who is duly registered and authorized to do business in the State of Florida, and thus is a citizen of the State of New Jersey.

5. Defendant, AMERICARIBE – MORIARITY JV ("AMJV"), is a joint venture, whose members consist of: (a) Americaribe Inc., a corporation organized and existing pursuant to the laws of the State of Florida, whose principal place of business is located in Miami, Florida and (b) John Moriarity & Associates of Florida, Inc., a corporation organized and existing under the laws of the State of Florida, whose principal place of business is located in Hollywood, Florida, and thus AMJV is a citizen of the State of Florida.

6. The amount in controversy exceeds $75,000.00, exclusive of interest, costs and attorneys' fees, and this Court otherwise has jurisdiction over the subject matter hereof.

7. Venue is proper in this Court because the contract at issue in this case was to be performed in Miami, Miami-Dade County, Florida.

8. All conditions precedent to the filing of the instant action have occurred or have otherwise been waived.

## II. GENERAL ALLEGATIONS

9. On or about February 26, 2014, AMJV, as general contractor, and Certified Pool Mechanics 1, Inc. ("CPM"), as subcontractor, entered into a written *Subcontract Agreement* (the "*Subcontract*") to perform certain pool work at the project commonly known as "Brickell CityCentre Super Structure" located at 700 Brickell Plaza, Miami, Florida (the "Project"). The

*Subcontract*, however, was not executed until March 14, 2014. A true and correct copy of the *Subcontract* is attached hereto and made a part hereof as **Exhibit "A"**.

10. On or about April 1, 2014, INTERNATIONAL FIDELITY INSURANCE COMPANY and ALLEGHENY CASUALTY COMPANY, as co-sureties (collectively, "IFIC"), issued a *Performance Bond* bearing no. OSACSU 0546754 (the "*Bond*") on behalf of CPM, as principal, with AMJV, as obligee. A true and correct copy of the *Bond* is attached hereto and made a part hereof as **Exhibit "B"**.

**A. The Conditions Precedent under the *Bond***

11. IFIC issued a standard AIA A312 (2010) Performance Bond in connection with the *Subcontract*.

12. Paragraph 2 of the *Bond* provides that IFIC "shall have no obligation under this Bond, except when applicable to participate in a conference as provided in Section 3."

13. Paragraph 3 of the *Bond* explicitly sets forth the express conditions precedent to trigger IFIC's performance obligations, stating in pertinent part:

> ***§3 If there is no [AMJV] Default under the Construction Contract, the Surety's obligation under this Bond shall arise after***
>
> .1 [AMJV] first ***provides notice to the Contractor and the Surety that [AMJV] is considering declaring a Contractor Default***. Such notice shall indicate whether [AMJV] is requesting a conference among [AMJV], Contractor and Surety to discuss the Contractor's performance. . . . ***If [AMJV], the Contractor and the Surety agree***, the Contractor shall be allotted a reasonable time to perform the Construction Contract, but such an agreement shall not waive the [AMJV's] right, if any, subsequently to declare a Contractor Default;
>
> .2 ***[AMJV] declares a Contractor Default, terminates the Construction Contract and notifies the Surety***; and
>
> .3 [AMJV] has agreed to ***pay the Balance of the Contract Price*** in accordance with the terms of the Construction Contract to the

> Surety or to a contractor selected to perform the Construction Contract. (Emphasis added)

14. In addition to there being no default by AMJV under the *Subcontract*, paragraph 3 of the *Bond* requires a three step process before IFIC has an obligation to exercise one of its performance obligations under paragraph 5 of the *Bond*: (a) AMJV must provide notice to CPM and IFIC of AMJV's intent to declare a default and allow for a pre-default conference; (b) AMJV must issue a formal declaration of default, terminate CPM under the *Subcontract*, and provide notice to IFIC; and (c) AMJV must acknowledge that it will pay the balance of the contract price to IFIC.

15. As part of the express conditions precedent set forth in paragraph 3 of the *Bond*, and more specifically the requirement that AMJV terminate CPM under the *Subcontract*, AMJV was also required to comply with the requirements of the *Subcontract*, which are incorporated into the *Bond* by paragraph 1 thereof. Paragraph 12.2 of the *Subcontract* establishes that prior to AMJV's termination of CPM, AMJV must provide CPM with an additional three (3) day notice of AMJV's intent to terminate:

> Termination for Cause. If Subcontractor at any time fails to supply a sufficiency of skilled workmen or materials of the proper quality and quantity, or fails to prosecute the Work with promptness and diligence, or causes the stoppage or delay of or interference with the Work of Contractor, or further fails to cure the default after the three (3) day notice in Article 11.2(a), ***Contractor shall be at liberty to terminate this Subcontract Agreement upon an additional three (3) day written notice mailed or delivered to Subcontractor*** and take possession of all materials on site and employ others to complete the Work. . . (Emphasis added).

16. It is only after AMJV has satisfied all of the conditions of paragraph 12.2 of the *Subcontract* and paragraph 3 of the *Bond* that IFIC's obligations are invoked, allowing IFIC the bargained-for-right to mitigate damages by arranging for the completion of the work under the

*Subcontract*. In particular, paragraph 5 of the *Bond* provides IFIC with the opportunity to remedy the default by electing one of its available performance options:

> a. ***Arrange for the Contractor***, with the Consent of the Owner, ***to perform and complete the Construction Contract*** [§5.1];
>
> b. ***Undertake to perform and complete the Construction Contract itself***, through its agents or independent contractors [§5.2];
>
> c. ***Obtain bids or negotiated proposals*** from contractors acceptable to the Owner for a contract ***for performance and completion of the Construction Contract*** . . . . [§5.3]; or
>
> d. ***Waive its right to perform and complete, arrange for completion, or obtain a new contractor*** . . . . [§5.4] (Emphasis added)

17. Paragraph 6 of the *Bond* allows IFIC a reasonable time to investigate and select its option under the *Bond*. This includes, among other things: (a) reviewing the project records; (b) inspecting the work completed; (c) analyzing the tasks remaining for completion; (d) determining the validity of the default allegations; (e) developing a re-let bid package; and (f) soliciting bids and awarding bids, if necessary.

18. After a reasonable time has elapsed, AMJV must provide IFIC with an additional seven (7) day written notice before AMJV may be entitled to enforce any remedy against IFIC under the *Bond*. Paragraph 6 of the *Bond* provides in pertinent part:

> If the Surety does not proceed as provided in Section 5 with reasonable promptness, the ***Surety shall be deemed to be in default on this Bond seven days after receipt of an additional written notice from the Owner to the Surety demanding that the Surety perform its obligations under this Bond***, and the Owner shall be entitled to enforce any remedy available to the Owner. . . . (Emphasis added)

## B. The Construction Dispute and AMJV's Decision to Unilaterally Complete

19. By July 2015, construction and scheduling disputes arose between AMJV and CPM, leading to the issuance of a series of complaint and cure notice letters.

20. On July 15, 2015, AMJV issued its alleged *First Notice of Default* to CPM, which letter was not copied to IFIC.

21. On August 17, 2015, AMJV issued its alleged *Second Notice of Default* to CPM with a copy to IFIC, advising CPM that if certain work was not completed by August 24, 2015, AMJV would request a conference call with IFIC "*to substitute CPM's scope with an alternative subcontractor*."

22. Three (3) days later, by its correspondence dated August 20, 2015, IFIC warned AMJV to avoid taking any action to complete the project without IFIC's written consent:

> Pursuant to the terms and conditions of the performance bond in questions and generally accepted principles of surety law, ***you are directed not to take any steps with respect to the completion of the project without the written consent of the Surety. Any action by you without such consent will clearly prejudice the rights of the Surety under the bond***. The Surety hereby advises you that it will not be liable for same. (Emphasis added)

IFIC's August 20, 2015 correspondence also requested AMJV to provide certain project information to assist IFIC in its preliminary investigation. A true and correct copy of IFIC's August 20, 2015 correspondence is attached hereto and made a part hereof as **Exhibit "C"**.

23. By its correspondence dated August 31, 2015, AMJV requested a conference call with CPM and IFIC, advising that AMJV "will be looking to the sureties for all damages recoverable under the Bond." This letter, however, was neither directed to IFIC, nor mailed to IFIC as required under paragraph 12 of the *Bond*.

24. Having already declared CPM in default, AMJV's August 31, 2015 notice did not comply with the "*pre-default*" requirements of paragraph 3.1 of the *Bond*. Such action and/or omission on the part of AMJV prejudiced IFIC in its ability to take steps to avoid a default and mitigate potential damages resulting therefrom.

25. By September 15, 2015, AMJV had not complied with IFIC's request for information dated August 20, 2015. Notwithstanding, by correspondence dated September 15, 2015, IFIC provided AMJV with IFIC's preliminary written observations on certain scheduling issues, and requested AMJV's written reply, as well as the production of outstanding information.

26. In its correspondence dated September 15, 2015, IFIC again warned AMJV against its unilateral completion of the bonded work:

> In closing, we understand that [AMJV] has solicited pricing from other contractors to complete CPM's remaining work. ***We wish to remind you that [ACC] requires full compliance with each and every term and condition of the referenced Performance Bond, and that any action by [AMJV] in violation of the bond terms may discharge any obligation that may otherwise exist under the bonds***. ***In this regard, your decision to have the bonded work completed by others may be a violation of the bond and moreover clearly prejudice the rights of the Surety under the bond***. The Surety hereby advises you that it will not be liable for same and that we expressly reserve all rights, claim and defenses under the bond, at law or in equity. (Emphasis added)

A true and correct copy of IFIC's September 15, 2015 correspondence is attached hereto and made a part hereof as **Exhibit "D"**.

27. Despite IFIC's repeated warnings, and prior to even terminating CPM and making demand upon IFIC under the *Bond*, AMJV and its completion contractor, Dillon Pools, Inc. ("Dillon Pools"), were in active negotiations to perform CMP's contractual scope of work. Indeed, on September 16, 2015, AMJV obtained a proposal from Dillon Pools to complete the remaining scope of the *Subcontract*.

28. By its correspondence dated September 21, 2015, AMJV declared CPM in default, terminated the *Subcontract* and made demand upon IFIC to perform under the *Bond*.

29. At no time prior to its termination on September 21, 2015 did AMJV provide CPM with the additional three (3) day notice of AMJV's intent to terminate required by paragraph 12.2 of the *Subcontract.*

30. On the very next day, September 22, 2015, AMJV advised CPM and IFIC of AMJV's intent to retain Dillon Pools to perform CMP's scope of work under the *Subcontract*. To this end, AMJV's September 22, 2015 letter states in pertinent part:

> The subcontract with [CPM] has been terminated and they are no longer on the project. ***AMJV intends to award the subcontract <u>to complete the remaining work</u> on the East, North and West Block Pools at the Brickell Centre Project <u>to Dillon Pools, Inc</u>***.
>
> . . . Please proceed to provide all necessary lists of material, delivery dates and pricing to Dillon Pools as enquired [sic] ***<u>to complete the Pool scope of work for the project</u>***.

A true and correct copy of IFIC's September 22, 2015 correspondence is attached hereto and made a part hereof as **Exhibit "E"**.

31. On September 23, 2015, only two (2) days *after* AMJV default/terminated CPM and made demand under the *Bond*, Dillon Pools commenced to complete the remaining scope of the *Subcontract* at the direction of AMJV. Shortly thereafter, AMJV and Dillon Pools entered into a contract to perform the remaining work under the *Subcontract*.

32. On September 29, 2015, IFIC responded to AMJV's demand for performance under the *Bond*, advising of its continuing investigation and evaluation of the claim, as well as reiterating its previous request for information. Again, and for the third time, IFIC warned AMJV not to take any steps interfering with IFIC's bargained-for right to mitigate damages and complete the bonded work:

> Pursuant to the terms and conditions of the performance bond in question and generally accepted principles of surety law, ***you are directed not to take any steps with respect to the completion of the project without the***

> ***written consent of the Surety. Any action by you without such consent will clearly prejudice the rights of the Surety under the bond. The Surety hereby advises you that it will not be liable for same***. (Emphasis added).

A true and correct copy of IFIC's September 29, 2015 correspondence is attached hereto and made a part hereof as **Exhibit "F"**.

33. By its correspondence dated October 1, 2015, AMJV provided IFIC with the requisite "additional [seven (7) day] notice" under paragraph 6 of the *Bond* of AMJV's intent to declare a surety default, contending that IFIC's *reasonable period of time* to elect a remedy under the *Bond* had expired.

34. As of October 1, 2015, the date of the purported "additional [seven (7) day] notice", only nine (9) days had lapsed from the date of AMJV's demand under the *Bond* (*i.e.*, September 21, 2015). At this juncture, AMJV had neither provided IFIC with the documents requested on August 20, 2015, nor responded to IFIC's September 15, 2015 correspondence. Despite time being of the essence, AMJV did not respond to IFIC's correspondence until October 19, 2015, more than a month later, and has still not provided the requested documents.

35. Even under AMJV's alleged seven (7) day cure notice to IFIC under paragraph 6 of the *Bond*, IFIC had until October 8, 2015 to elect its remedy. This notice period was illusory as by October 8, 2015, AMJV had contracted with Dillon Pools to complete the work remaining under the *Subcontract*, and Dillon Pools, in fact, was already performing the completion work.

36. Based upon IFIC's site inspection on October 21, 2015, Dillon Pools had performed significant completion work on the Project, including but not limited to: (a) modifying the existing pipe installed by CPM and installing new pipe between the pool and the collector tanks on the East Block pools; (b) placing and installing pipe to connect the collector tanks on the

North Block Pools; and (c) removing pipe installed by CPM between the collector tank and the pool on the West Block.

37. By correspondence dated November 5, 2015, IFIC issued its formal denial of AMJV's claim under the *Bond*, concluding that AMJV's actions and/or omissions in failing to comply with the terms of the *Bond* constituted a material breach, rendering same null and void and of no further force and effect. IFIC supplemented its denial letter by its correspondence dated November 6, 2015, addressing AMJV's failure to issue the additional three (3) day notice of AMJV's intent to terminate required by paragraph 12.2 of the *Subcontract.* A true and correct copy of IFIC's November 5, 2015 and November 6, 2015 correspondence are attached hereto and made a part hereof as **Composite Exhibit "G"**.

**COUNT I - DECLARATORY JUDGMENT**
**(AS TO CONDITIONS PRECEDENT)**

38. IFIC re-alleges and re-avers the allegations of paragraphs 1 through 37 hereof, as if fully set forth herein.

39. There is a bona fide present controversy between the parties covering the rights and obligations of IFIC under the *Bond*.

40. AMJV has failed to satisfy the condition precedent of paragraph 6 the *Bond* by failing to provide IFIC with a reasonable period of time to investigate and elect its performance option before undertaking to unilaterally complete the bonded scope of work.

41. Nine (9) days (*i.e.*, from September 21, 2015 to October 1, 2015) is not a "reasonable" period of time for IFIC to investigate and select its option under the *Bond*, which efforts include, among other things: (a) reviewing the project records; (b) inspecting the work completed; (c) analyzing the tasks remaining for completion; (d) determining the validity of the

default allegations; (e) developing a re-let bid package; and (f) soliciting bids and awarding bids, if necessary.

42. AMJV's alleged additional seven (7) day notice under paragraph 6 of the *Bond* was a nullity. Such notice was provided on October 1, 2015, seven (7) days *after* Dillon Pools had already commenced completion work. Notice after the fact is no notice at all.

43. Further, AMJV has failed to satisfy the condition precedent of paragraph 3.1 the *Bond* by failing to provide notice that it was "considering declaring a Contractor Default" of CPM under the *Subcontract* and allowing for a *pre*-default conference to be conducted. Failure to adhere to this condition precedent caused actual prejudice to IFIC under paragraph 4 of the *Bond* by detrimentally affecting IFIC's ability to take steps to avoid a default and mitigate any potential damages resulting therefrom.

44. Likewise, AMJV has failed to satisfy the condition precedent of paragraph 12.2(a) of the *Subcontract*, as incorporated into the *Bond*, by failing to provide CPM with the required additional three (3) day notice of AMJV's intent to terminate the *Subcontract.*

45. Finally, AMJV's failure to cooperate in IFIC's investigation has further prejudiced IFIC's ability to ascertain whether there exists an "Owner Default" by AMJV under the *Subcontract*. Upon further discovery, IFIC reserves the right to assert AMJV's failure to satisfy the condition precedent of paragraph 3 of the *Bond* that AMJV not be in "default" under the *Subcontract.*

46. IFIC seeks a declaration that AMJV has failed to satisfy the conditions precedent to assert a claim against the *Bond*, and that IFIC has no obligations under the *Bond*.

47. IFIC has retained the undersigned counsel to represent its interests in the instant action, and is required to pay a reasonable fee for such services. Pursuant to the *Bond*,

*Subcontract*, and applicable statutes, IFIC is entitled to recover its attorneys' fees and costs for pursuing the instant action against AMJV.

WHEREFORE, Plaintiff IFIC respectfully requests that this Honorable Court enter a judgment in its favor and against Defendant AMJV:

a. Finding that AMJV failed to satisfy any and/or all of the following conditions precedent under the *Bond*, including failing to: (a) provide IFIC with a reasonable period of time to investigate and elect its performance option before undertaking to unilaterally complete the bonded scope of work under paragraph 6 of the *Bond*; (b) issue the requisite pre-default notice to IFIC under paragraph 3.1 of the *Bond*, and allow for a pre-default conference to be conducted; and (c) provide CPM with the required additional three (3) day notice of AMJV's intent to terminate as required by paragraph 12.2(a) of the *Subcontract*, as incorporated into the *Bond*;

b. Declaring that AMJV's claim against the *Bond* is barred and that IFIC has no obligations to AMJV under the *Bond*,

c. Awarding IFIC its attorneys' fees and costs incurred in connection with the prosecution of the instant action; and

d. Awarding IFIC such other and further relief as may be necessary, just and proper under the circumstances.

**COUNT II - DECLARATORY JUDGMENT**
**(AS TO UNILATERAL COMPLETION)**

48. IFIC re-alleges and re-avers the allegations of paragraphs 1 through 37 hereof, as if fully set forth herein.

49. There is a bona fide present controversy between the parties covering the rights and obligations of IFIC under the *Bond*.

50. AMJV unilaterally completed the *Subcontract*.

51. AMJV failed to provide IFIC with an opportunity to remedy the default by electing one of its performance options under paragraph 5 of the *Bond*.

52. AMJV's actions and/or inactions constitute a material breach of the *Bond* by improperly performing the work under the *Subcontract*, without allowing IFIC the opportunity to exercise its contractual right to remedy the default in violation of paragraph 5 of the *Bond*.

53. IFIC seeks a declaration that AMJV has materially breached and rendered the *Bond* null and void.

54. IFIC has retained the undersigned counsel to represent its interests in the instant action, and is required to pay a reasonable fee for such services. Pursuant to the *Bond*, *Subcontract*, and applicable statutes, IFIC is entitled to recover its attorneys' fees and costs for pursuing the instant action against AMJV.

WHEREFORE, Plaintiff IFIC respectfully requests that this Honorable Court enter a judgment in its favor and against Defendant AMJV:

a. Finding that AMJV has breached the *Bond* by unilaterally completing the *Subcontract* without providing IFIC an opportunity to exercise one of its performance options under paragraph 5 of the *Bond*;

b. Declaring that IFIC has no obligations to AMJV under the *Bond* and that the *Bond* is null and void, thereby eliminating any potential and/or future liability of IFIC thereunder;

c. Awarding IFIC its attorneys' fees and costs incurred in connection with the prosecution of the instant action; and

d. Awarding IFIC such other and further relief as may be necessary, just and proper under the circumstances.

**DATED** this 9th day of November, 2015.

**ETCHEVERRY HARRISON LLP**
Attorneys for IFIC
150 South Pine Island Road, Suite 105
Ft. Lauderdale, FL 33324
Phone: (954) 370-1681
Fax: (954) 370-1682
etcheverry@etchlaw.com
geller@etchlaw.com
service@etchlaw.com

By: /s/ Edward Etcheverry
Edward Etcheverry, Fla. Bar No.: 856517
Jeffrey S. Geller, Fla. Bar No.: 63721